1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed: 01.28.10**

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO NANKIN, an individual; and ELEANOR ARLENE NANKIN, an individual, | ) CASE NO. CV 09-07851 MMM (RZx) ) ) ) |
| Plaintiffs, | ) ORDER REMANDING ACTION TO ) STATE COURT ) |
| vs. | ) ) |
| CONTINENTAL AIRLINES, INC., a Delaware corporation; CARL STEWART, an individual; and DOES 1 through 20, Inclusive, | ) ) ) ) ) ) |
| Defendants. | ) ) |

On August 31, 2009, Pablo and Eleanor Arlene Nankin filed this action against Continental Airlines, Inc. ("Continental"), Carl Stewart, and certain fictitious defendants in Los Angeles Superior Court. Defendant Continental was served with a copy of the summons and complaint on September 28, 2009. Both Continental and Stewart filed answers in state court on October 26, 2009.[1] Continental removed the action to federal court on October 28, 2009.

On January 15, 2010, the court issued an order to show cause why the case should not be

---

[1] Defendant Continental's Notice of Removal ("Notice of Removal"), Docket No. 1 (Oct. 26, 2009).

remanded for lack of subject matter jurisdiction.[2]   Continental filed a response to the order to show cause on January 22, 2010, asserting that federal jurisdiction exists because plaintiff's state law claims are preempted by the Montreal Convention, a treaty of the United States.[3]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.      Plaintiff's Complaint

This action concerns damages allegedly sustained by plaintiffs while traveling internationally from Acapulco, Mexico to Los Angeles.  Plaintiffs purchased round-trip airline tickets from Continental for a vacation to Mexico.[4] On their return to the United States, plaintiffs had a stop-over in Houston, Texas.[5]  Both plaintiffs assert that, although they had less than one hour to get to their next flight, Maria Mahar, an employee and agent of Continental, refused to help them move quickly through immigrations and customs at the Houston airport.[6]   Mahar asserted that she had no obligation to do so because Continental had other flights going to Los Angeles.[7]  Pablo Nankin spoke with Mahar's supervisor, Carl Stewart.  Stewart purportedly said he was a Continental supervisor and TSA agent, although he presented no identification.  Stewart too allegedly refused to help plaintiffs.[8] When Nankin asked Stewart for his name, Stewart

---

[2]Order to Show Cause re: Lack of Subject Matter Jurisdiction ("Order"), Docket No. 9 (Jan. 15, 2010).

[3]Defendants Continental and Stewart's Response to Order to Show Cause ("Def.'s Response"), Docket No. 10 (Jan. 22, 2010).

[4]Plaintiff's Complaint for Damages ("Complaint"), attached to Notice of Removal ¶¶ 9 (August 31, 2009).

[5]*Id.,* ¶ 10.

[6]*Id.*, ¶¶ 12-13.

[7]*Id.*

[8]*Id.*, ¶¶ 13-14.

2

allegedly seized Pablo Nankin's boarding pass and insisted that immigration officers intervene.[9] Once immigration officers became involved, the Nankins were allegedly cleared through immigrations.[10]   At this point, Stewart again approached the Nankins and informed them that Eleanor Nankin could fly, but Pablo Nankin could not, and that if Pablo Nankin did not leave the area, he would be banned from all U.S. domestic flights.[11]   Plaintiffs assert that they were forced to forfeit their tickets and fly on American Airlines at their own expense, with an added stop in Dallas.[12]

Their complaint alleges claims for (1) breach of contract; (2) breach of warranty; (3) negligent infliction of emotional distress; and (4) unlawful and unfair business practices.

### B.    Defendant's Notice of Removal

In their notice of removal, defendants contend that the Montreal Convention completely preempts plaintiffs' claims because the treaty "exclusively governs claims and the recovery of damages arising out of international air carriage."[13]   Based on complete preemption, defendants assert that plaintiffs' claims require resolution of a federal question and that the court has jurisdiction as a result.

## II.  DISCUSSION

### A.    Removal Jurisdiction

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the

---

[9]*Id.*, ¶ 15.

[10]*Id.,* ¶ 16.

[11]*Id.*, ¶ 17.

[12]*Id.*, ¶ 18.

[13]Notice of Removal, ¶ 5.

district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), and *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhard v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

"The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712, n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)). Thus, defendant must show by a preponderance of the evidence that federal jurisdiction exists. See *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1091 (9th Cir. 2003); see also *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("[u]nder [the preponderance of the evidence] burden, the defendant must provide evidence establishing that it is 'more likely than not' [that jurisdiction exists]").

**B.     Whether This Case Falls Within the Court's Federal Question Jurisdiction**

       **1.     Legal Standard**

There are two statutorily prescribed bases for federal subject matter jurisdiction: diversity jurisdiction, 28 U.S.C. § 1332, and federal question jurisdiction, 28 U.S.C. § 1331. "Federal district courts have original federal question jurisdiction of actions 'arising under the Constitution, laws, or treaties of the United States.'" *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371 (9th Cir.) (quoting 28 U.S.C. § 1331), cert. denied, 484 U.S. 850 (1987). Generally, under the "well-pleaded complaint rule," a claim "arises under" federal law only if a federal question appears on the face of plaintiff's complaint. See *ARCO Environmental Remediation, L.L.C. v. Department of Health & Environmental Quality of Montana*, 213 F.3d 1108, 1113 (9th Cir. 2000); see also *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The party who

4

brings the suit is master to decide what law he will rely upon"); *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 27-28 (1983) ("federal courts have jurisdiction to hear, originally or by removal, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law"); *id.* at 10 ("a defendant may not remove a case to federal court unless the *plaintiff's complaint* establishes that the case 'arises under' federal law" (emphasis added)); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *Hunter v. United Van Lines*, 746 F.2d 635, 641 (9th Cir. 1984), cert. denied, 474 U.S. 863  (1985).   Thus, even if  defendant asserts a defense based exclusively on  federal law, so long as plaintiff's claim is a state law claim, removal jurisdiction is lacking.   See *ARCO*, 213 F.3d at 1113 ("the existence of federal jurisdiction depends solely on the plaintiff's claims for relief and not on anticipated defenses of those claims").

There are, however, exceptions to the "well-pleaded complaint rule" that allow the court to look beyond the face of plaintiff's pleading.   Under the "artful pleading" doctrine, a plaintiff cannot defeat removal of a federal claim by disguising or pleading it artfully as a state law claim. Where this occurs, the federal court will recharacterize the claim and uphold removal.   See *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 n. 2 (1981); *Schroeder v. TransWorld Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983).   Another exception arises where a state law claim is completely preempted by federal law; in such circumstances, the preemptive force of federal law "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65 (1987).   Finally, even if "state law creates the cause of action, and no federal law completely preempts it, federal jurisdiction may still lie if 'it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims.'" *Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 345 (9th Cir. 1996).

### 2. The Montreal Convention

Continental removed this action on the basis that the Nankins' claims arose under federal

law and were completely preempted by the Montreal Convention, also known as the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 (2000), 1999 WL 33292734 (2000).

a.     **Whether the Montreal Convention Completely Preempts State Law Claims**

The Montreal Convention "was the product of a United Nations effort to reform the Warsaw Convention 'so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists.'" *Sompo Japan Insurance, Inc. v. Nippon Cargo Airlines Co., Ltd*, 522 F.3d 776, 780 (7th Cir. 2008) (quoting *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 371 n. 4 (2d Cir. 2004)). The Montreal Convention covers "all international carriage of persons, baggage or cargo performed by aircraft for reward." Montreal Convention Art. 1(1). See also *Nobre v. American Airlines*, No. 09-61170-CIV, 2009 WL 5125976, *2 (S.D. Fla. Dec. 21, 2009) ("[The Convention] is the exclusive mechanism for recovery for personal injuries suffered on board an aircraft or in the course of embarking or disembarking from an airplane").

In its response to the Court's order to show cause for lack of subject matter jurisdiction, Continental asserts that the Ninth Circuit, in *Carey v. United Airlines*, 255 F.3d 1044 (9th Cir. 2001), held that the Warsaw Convention provides the only cause of action for personal injuries suffered on board an aircraft or during the process of embarking or disembarking.[14] Citing *Carey*, Continental asserts that since all personal injury claims arising out of international air transportation are barred unless allowed by the Convention, the Convention is the exclusive remedy for any intentional misconduct by an airline employee.[15]

The *Carey* court cited *El Al Israeli Airlines, Ltd. v. Tseng*, 525 U.S. 155 (1999), as authrioty for the proposition that the Warsaw Convention provides the exclusive remedy for international air travelers. *Carey*, 255 F.3d at 1054. In *El Al*, a passenger sued for psychological

---

[14]Def.'s Response at 3 n.2.

[15]*Id.*

injuries allegedly caused by an intrusive search to which he was subjected before boarding an airplane. The passenger's injury occurred before the United States had ratified Montreal Protocol No. 4, at a time when the Warsaw Convention contained no exclusivity clause. The passenger conceded that his injuries were not caused by an "accident" within the meaning of the Warsaw Convention and that he could not recover under the Convention. He argued, however, that because the Convention afforded him no recovery, it did not preclude him from recovering under state tort law. The Court disagreed, holding that, even absent an express exclusivity clause, the Warsaw Convention precluded alternative causes of action for injuries suffered while boarding, on board, or disembarking from an aircraft. To the extent recovery is "not allowed under the Convention," the Court stated, "[it] is not available at all." *El Al*, 525 U.S. at 161 (internal quotation and citation omitted). Such a result was required, it noted, because permitting a plaintiff to assert state law claims for injuries within the scope of the Convention would "undermine the uniform regulation of international air carrier liability that the Warsaw Convention was designed to foster." *Id*. The Court held that Montreal Protocol No. 4, which had been ratified by the time *El Al* was decided, "merely clarifie[d], [but] d[id] not alter, the Convention's rule of exclusivity." *Id*. at 174.

The issue before the *El Al* Court was conflict preemption. The Court did not address whether the Warsaw Convention completely preempted state law, and whether the Montreal Convention completely preempts state law remains an open question today. The Montreal Convention, which went into force in 2003, contains an exclusivity provision, Article 29, which provides that its conditions and limitations of liability govern in any case seeking damages for carrying passengers, baggage or cargo:

> "In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. . . ."
> Montreal Convention, Art. 29.

7

Applying the reasoning of *El Al* to the Montreal Convention, one court found that:

> "As the replacement for the Warsaw Convention, the Montreal Convention is similarly designed to foster a uniform regulation of international air carrier liability. Just as a need to avoid interference with this purpose led the *El Al* Court to interpret the Warsaw Convention as exclusive, even before the addition of the exclusivity language of Montreal Protocol No. 4, the same rationale requires that the Montreal Convention be interpreted to have a similar underlying pre-emptive effect, even without the express exclusivity language contained in Article 29. The Montreal Convention, like the Warsaw Convention, will therefore bar any claim outside its terms for personal injury suffered on board an aircraft or in the course of any of the operations of embarking or disembarking." *Schaefer-Condulmari*, 2009 WL 4729882 at *6.

The fact that the Montreal Convention has preemptive effect, however, does not compel the conclusion that it completely preempts state law causes of action and consequently vest subject matter jurisdiction in this court. It is true, as Continental notes, that the Ninth Circuit and Supreme Court have considered conflict preemption under the Warsaw Convention. Neither court, however, has considered complete preemption under either the Warsaw or Montreal Conventions. Other federal courts that have considered the issue have disagreed as to whether the Convention completely preempts state law. Compare *Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1151 (8th Cir. 1999) (holding that the Warsaw Convention completely preempted Missouri tort claims); *Schaefer-Condulmari*, 2009 WL 4729882 at *9 (finding that the Convention completely preempts state law because the Convention contains civil enforcement provisions whose scope encompassed plaintiff's claims and the exclusivity provision evidenced an intent to provide an exclusive federal remedy); *Schoeffler-Miller v. Northwest Airlines, Inc.*, No. 08-CV-4012, 2008 WL 4936737, *3 (C.D. Ill. Nov. 17, 2008) (finding that the Montreal Convention completely preempted state tort claims); *Singh v. N. Am. Airlines*, 426 F.Supp.2d 38, 48 (E.D.N.Y. 2006) (same), with *Sompo Japan Insurance, Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 785-86 (7th Cir. 2008) (holding that the Warsaw Convention's exclusivity

provisions "simply operate as an affirmative defense" and do not completely preempt state law causes of action, and observing that the Convention "expressly contemplates the use of state law to fill in the interstices"); *Distribuidora Dimsa v. Linea Aerea del Cobre Sa*, 976 F.2d 90, 93 (2d Cir. 1992) (denominating the liability limitations of the Warsaw Convention an affirmative defense); *Shah v. Kuwait Airlines Corp.*, 653 F.Supp.2d 499, 502 (S.D.N.Y. 2009) (concluding that the Montreal Convention functions as an affirmative defense); *Narkiewicz-Laine v. Scandinavian Airlines Sys.*, 587 F.Supp.2d 888, 890 (N.D. Ill. 2008) ("Plaintiff brought state-law breach of contract claims.  Because the conditions and limits of the Montreal Convention are defenses to the state-law claims raised by plaintiff, they do not provide a basis for federal-question subject matter jurisdiction"); *Akrami v. British Airways PLC*, No. C 01-02882 SC, 2002 WL 31031324, *3-5 (N.D. Cal. Sept. 10, 2002) (no complete preemption in the Warsaw Convention); *Fournier v. Lufthansa German Airlines*, 191 F.Supp.2d 996, 1003 (N.D. Ill. 2002) (same); 0 *Rogers v. American Airlines, Inc.*, 192 F.Supp.2d 661, 663 (N.D. Tex. 2001) ("[While] the Warsaw Convention's exclusivity provisions may well preempt Plaintiffs' state law claims, the delicate balance between state and federal courts cautions against finding that the field of international air travel is so completely preempted that any claim relating to the area is 'necessarily federal in character'").

Article 29 applies to "any action for damages, however founded, whether under this Convention *or in contract or in tort or otherwise*."  Montreal Convention, Art. 29 (emphasis added).  Interpreting this language, Judge Matz oncluded that by its own terms, the Convention "does not apply only to actions brought 'under this Convention,' as that would render meaningless the words 'or in contract or in tort or otherwise.'  Hence, the plain language of the Convention demonstrates that not all damages actions involving the carriage of passengers, baggage and cargo arise under the Convention."  *Serrano v. American Airlines, Inc.*, No. CV 08-2256 AHM (FFMx), 2008 WL 2117239, *3 (C.D. Cal. May 15, 2008).  Judge Matz noted that the defendant who had removed the case "tend[ed] to conflate ordinary preemption with the complete preemption exception to the well-pleaded complaint rule."  *Id.* at *6 n. 1.  Citing *Rogers*, Judge Matz concluded that "the uniformity required by the Warsaw Convention may be achieved

1   through 'exclusive remedies and liabilities,' not through a requirement that all such cases be
2   brought in federal court." *Id.* at *7 (quoting *Rogers*, 192 F.Supp.2d at 671).

3         For the reasons articulated by Judge Matz in *Serrano*, the court similarly concludes that
4   the Montreal Convention does not completely preempt state law causes of action.  Rather, it
5   controls the remedies available and liabilities that can be imposed via those causes of action.
6   Consequently, the Montreal Convention provides no basis for asserting that federal subject matter
7   jurisdiction exists in this case.

8         **b.**    **Whether the Montreal Convention Applies to Claims Alleging**
9         **Nonperformance of an Air Transport Contract**

10        Although the court finds *Serrano* and *Rogers* persuasive, there is a more substantial issue
11  regarding the existence of jurisdiction in this case.  Article 19 of the Montreal Convention
12  imposes liability for damages resulting from delay of passengers, baggage, or cargo.  Here,
13  plaintiffs allege non-performance of their air transport contract with Continental, not delay.
14  Specifically, plaintiffs contend that they were not permitted to board a Continental flight, and were
15  forced to secure transport on a different airline.

16        "The plain language of Article 19 of the Montreal Convention indicates that it governs
17  claims for delay, not nonperformance.  Moreover, . . . the drafting history of the Warsaw
18  Convention's Article 19 – whose pertinent language is identical to its Montreal Convention
19  counterpart – indicates that it was not intended to cover claims for nonperformance." *In re*
20  *Nigeria Charter Flights Contract Litigation*, 520 F.Supp.2d 447, 452-53 (E.D.N.Y. 2007) (citing
21  *Wolgel v. Mexicana Airlines*, 821 F.2d 442, 444 (7th Cir. 1987) ("Article 19 of the Warsaw
22  Convention provides that '[t]he carrier shall be liable for damage occasioned by delay in the
23  transportation by air of passengers, baggage, or goods.'  The first question in this case is whether
24  this provision extends to claims of discriminatory bumping.  We conclude that it does not")).  See
25  also *Wolgel*, 821 F.2d at 445 ("The history of the Warsaw Convention indicates that the drafters
26  of the Convention did not intend the word 'delay' in Article 19 to extend to claims . . . that arise
27  from the total nonperformance of a contract").

28        "[W]here a plaintiff claims total nonperformance of the contract, courts scrutinize the facts

1   to determine whether the claim, however founded, actually arose out of a delay in transportation.

2   Courts have construed nonperformance claims as sounding in delay where plaintiff was initially

3   refused boarding but the defendant airline ultimately transported plaintiff on a later flight . . . and

4   where defendant airline caused a passenger to miss a flight and the passenger secured alternate

5   transportation without waiting to see if defendant would transport him." *Kamanou-Goune v.*

6   *Swiss International Airlines*, No. 08 Civ. 7153(SCR)(GAY), 2009 WL 874600, *4 (S.D.N.Y.

7   Mar. 27, 2009) (citing *Ikekpeazu v. Air France*, No. 3:04cv00711, 2004 WL 2810063, *2 (D.

8   Conn. Dec. 6, 2004) (finding that the Montreal Convention applied to the claim of a plaintiff who,

9   after delay, was permitted to board a later flight on the same airline), and *Oparaji v. Virgin*

10  *Atlantic Airways, Ltd.*, No. 04-CV-1554 (FB),  2006 WL 2708034, *3-4 (E.D.N.Y. Sept. 19,

11  2006) (where plaintiff is faced with a delay on his original airline, and chooses to purchase a ticket

12  on another airline for an earlier flight, his claim concerns delay within the scope of Article 19

13  because a passenger cannot convert delay into nonperformance by unilateral action)).

14          In *Kamanou-Goune*, plaintiff was twice told that her daughter would be unable to board

15  any Swiss Air flight.  2009 WL 874600 at *5.  The court concludes that her claims did not fall

16  within the scope of the Montreal Convention because, "[b]ased upon Swiss Air's words and

17  actions, it was reasonable for plaintiff to believe that Swiss Air clearly refused to perform the

18  contract." *Id.*  In this case, there is no indication that Continental offered plaintiffs alternate

19  travel arrangements. Rather, the complaint alleges that defendant Stewart seized Pablo Nankin's

20  boarding pass, notified him that he would be barred from boarding any Continental flight, and

21  threatened that he would be barred from all U.S. domestic flights if he did not leave the area.[16]

22  Based on plaintiffs' allegations, it clearly appears that, through its employees, Continental refused

23  to perform the contract.  The Montreal Convention is thus not applicable to plaintiffs' claims.

24          Taking issue with the court's order to show cause, Continental argues that this case is

25  unlike *Wolgel* and *Nigeria Charter*.[17]  It contends that  plaintiffs had "essentially completed most

26  _____

27          [16]Complaint, ¶ 17.

28          [17]Def.'s Response at 4, n.2

1   of their international transportation and were on their way home when this incident occurred."

2   It contrasts this with the plaintiffs in *Wolgel*, who had been bumped from a flight, had not been

3   given alternative travel plans from their air carrier and thus never left the airport.[18]  While *Wolgel*

4   was cited in the order to show cause, the court did not intend to suggest that it was factually

5   similar to the Nankins' claim.  Rather, the court cited *Wolgel*'s analysis of the history and scope

6   of Article 19.

7       Continental also maintains that plaintiffs' claims are different from those at issue in *Nigeria*

8   *Charter* because, "unlike the *Nigeria Charter* passengers, Plaintiffs herein were already en route

9   from Acapulco to Los Angeles and were trying to make their connection in Houston."

10  Continental concedes, however, that certain of the passengers in *Nigeria Charter* were "stranded

11  before the second leg of their trip."[19]  Thus, both cases involve defendants that began to perform,

12  but failed to complete, their contractual obligations.  In *Nigeria Charter*, certain plaintiffs had

13  flown from Lagos, Nigeria to New York on a round-trip ticket, and were stranded in New York

14  when defendant ceased performance of the contract.  *Nigeria Charter*, 520 F.Supp. 2d. at 450 n.

15  2.  The defendant in *Nigeria Charter* performed only a part of its air transport contract.  As the

16  court there noted, "'that the airline provided one flight according to contract does not necessarily

17  render the failure to provide carriage on another flight a mere delay rather than a total failure to

18  perform.'"  *Id.* at 455 (citing *Weiss v. El Al Israel Airlines, Ltd.*, 433 F.Supp.2d 361, 367

19  (S.D.N.Y. 2006)).

20      Plaintiffs allege no federal claims; their only causes of action are based on state statutory

21  and common law.  The court is not persuaded that state law claims such as plaintiffs' are

22  preempted by the Montreal Convention.  Additionally, and more fundamentally, the Convention

23  is not applicable here since plaintiffs allege nonperformance of their air transport contract, not

24  mere delay in performance.

25

26  _____

27  [18]Def.'s Response at 5 n.2.

28  [19]*Id.* at 4 n.2.

12

1

### III.  CONCLUSION

2

      For the reasons stated, the court remands the action to Los Angeles Superior Court

3

forthwith.

4

5

DATED: January 29, 2010

                                *Margaret M. Morrow*

6

                             MARGARET M. MORROW
                             UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28